IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAYNE M. WOODSON, # N10392, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv00240-GPM |
| ) | |
| PAT QUINN, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Dwayne M. Woodson, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986.[1] This case is now before the Court for a threshold review of the complaint under 28 U.S.C. § 1915A.

**Synopsis of the Case**

Plaintiff brings suit against 28 named individuals, including the governor of Illinois, past and present directors of the Illinois Department of Corrections ("IDOC"), prison officials at every institutional level, doctors, nurses, Wexford Health Sources, Inc.—the prison health care provider, and its owners and directors. It is alleged that, from January 2010 to the present, Plaintiff and "unassigned general population, maximum security prisoners over the age of 45,

---

[1] "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health,* 699 F.3d 962, 972 (7th Cir. 2012), *quoting* 42 U.S.C. § 1983. Similarly, Section 1985(3) is the vehicle used for conspiracies to deny a person or class of people equal protection of the laws due to class-based animus. *Xiong v. Wagner*, 700 F.3d 282, 287 (7th Cir. 2012); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Section 1986 is used to bring an action for failing to prevent a Section 1985(3) conspiracy. *Grimes v. Smith*, 776 F.2d 1359, 1363 n. 4 (7th Cir. 1985).

who suffer from chronic illnesses" have been subjected to inhumane conditions of confinement, denied adequate medical care in violation of the Eighth Amendment, and denied their First Amendment right to seek redress. Pursuant to 28 U.S.C. § 1367(a), Plaintiff also invokes this Court's supplemental jurisdiction over related state law claims for civil conspiracy, intentional infliction of emotional distress, *respondeat superior* liability, and indemnification. Plaintiff seeks compensatory and punitive damages, a mediated settlement, declaratory judgment, appointment of a "research methodologist" and special master, and injunctive relief. Plaintiff proposes that, pursuant to Federal Rule of Civil Procedure 23, this action proceed as a class action, but he has not formally moved for class certification.[2]

The allegations in the complaint present a causal chain beginning with prison overcrowding (117% of capacity), leading to the deterioration of the conditions of confinement, staff indifference and inmate violence, and resulting in excessive lockdowns (in terms of frequency, length and degree of restriction). The lockdowns during the relevant three-year period were principally triggered by "volatile incidents" and staff assaults, although brief lockdowns were due to other causes, such as "the weather." During a lockdown, inmates are confined to their cells for 23 hours per day (sometimes longer), unable to exercise or get sunlight; also, passes to the health care unit are cancelled, so needed medical care is not received.

---

[2] "[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002)). Furthermore, this Court is unaware of any class action that was allowed to proceed with a *pro se* prisoner as the class representative. *See* Fed.R.Civ.P. 23(a)(4). *See also Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) ("*[P]ro se* litigants are generally not appropriate as class representatives."); *Holmes v. Michigan Dep't of Corrections,* 805 F.2d 1034 (6th Cir. 1986) ("*[P]ro se* prisoners are not adequate class representatives able to fairly represent the class."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.")

By Plaintiff's calculation, Menard was on lockdown for 181 days in 2010, 118 days in 2011, and 147 days in 2012. The lockdown conditions were made even worse when heat indexes soared to 134 degrees on repeated days during the summer, particularly since inmates do not have access to cold water or air conditioning, and the cellblocks have little air flow.

Plaintiff asserts that the combined effect of the lockdowns, inadequate medical care, deprivation of medications, and the lack of exercise caused him to have a near-fatal hemorrhagic stroke in August 2010. After returning from the hospital, Plaintiff was purportedly denied proper after-care because the prison was on lockdown. Also, with respect to his individual claims, Plaintiff's efforts to pursue an investigation of his own innocence, and his efforts to support legislation for various "innocence projects," were hampered—which he characterizes as a denial of access to the courts. He also alleges that he was repeatedly hindered in his attempts to file grievances regarding all of these issues by a lack of grievance forms.

Plaintiff contends that *all* of the defendants, though their actions, inaction, enforcement of policies, and deliberate indifference conspired to retaliate against him and the other members of the proposed class by allowing the aforementioned conditions of confinement and deliberate indifference to serious medical needs.

**Pleading Standards**

Rule 8 of the Federal Rules of Civil Procedure dictates that a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). Although the Court is obligated to accept factual allegations as true, some factual allegations may be "so sketchy or implausible"

that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The allegations in the complaint must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks*, 578 F.3d at 581. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**Discussion**

After fully considering the allegations in Plaintiff's complaint, the Court concludes that, for the reasons explained below, this action is subject to dismissal without prejudice and with leave to amend, pursuant to Federal Rules of Civil Procedure 8(a)(2) and (d)(1). Plaintiff's complaint is 78 pages in length, with 25 pages of accompanying exhibits (Docs. 1, 1-1, 1-2, 1-3). Put succinctly, a prolix and confusing complaint, such as Plaintiff's, warrants dismissal with leave to amend because it makes it difficult for a defendant to file a responsive pleading and for the Court to conduct orderly litigation. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994).

Although the basic factual scenario described in the complaint is fertile ground for constitutional claims (particularly Eighth Amendment claims), the complaint—despite being 78 pages long—does not sufficiently plead any federal claims, which are necessary to secure this Court's jurisdiction and provide a basis for the exercise of supplemental jurisdiction over Plaintiff's state law claims. Even affording the complaint the liberal construction that a *pro se* pleading deserves, certain pleading standards must still be met and the Court cannot shoulder the

full burden of fashioning a viable complaint for a *pro se* plaintiff.

The section headings within the complaint illustrate the problem. The complaint contains a "Preliminary Statement," "Statement of Claims and Allegations," "Statement of Claims and Recent Facts," "Allegations of Fact-Defendants' Misconduct," as well as 13 numbered counts. Paragraphs 1-38 of the complaint, which include the "Preliminary Statement" and "Statement of Claims and Allegations," describe a myriad of factual allegations, but do not mention any defendants by name (Doc. 1, pp.14-31). Similarly, paragraphs 120-153, containing Count I-XIII, do not mention any specific defendants (Doc. 1-1, pp. 23-36). Only Count I even vaguely suggests possible defendants: "Lockdown coordinator ("John Doe's [sic]), medical staff, doctors[,] etc."

The "Allegations of Fact-Defendants' Misconduct" section, paragraphs 107-119, does associate specific defendants with factual allegations, but the allegations are too vague to form the basis of a claim, or they are wholly speculative (Doc. 1-1, pp. 13-22). These allegations can broadly be described as the "conspiracy claims." For example, Plaintiff baldly asserts that Governor Quinn and IDOC Directors Godinez, Randle and Taylor had overall authority to prevent all of the alleged wrongs. The doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff must allege that a defendant is "personally responsible for the deprivation of a constitutional right." *Id.* Plaintiff asserts that there was a broad conspiracy; he even identifies the defendants involved, but then he merely recites the elements of a conspiracy claim: "These Defendants' [sic] and their coconspirators … in pursuance of a common plan or design, acting in concert, under the colors [sic] of state law, and by agreement[,] either expressly or tacitly devised a scheme in furtherance of their objectives…." (Doc. 1-1, p. 17, ¶ 112).

The "Statement of Claims and Relevant Facts, paragraphs 39- 106, provides the most detailed allegations, associating named defendants with factual allegations, from which a few claims might be extrapolated (Doc. 1, pp. 32-41; Doc. 1-1, pp. 1-12).  However, the Court is left to fill in too much on its own—merely guessing—which is beyond liberally construing a *pro se* complaint.  Again, many of the allegations are confusing, or too vague to form the basis of a claim, or they are wholly speculative.  Some allegations have nothing to do with any potential claim, while others state viable claims against individuals who are not named defendants.   For example, Plaintiff describes in detail his difficulties with a nurse at St. Louis University Hospital during the time he was hospitalized following his stroke (Doc. 1-1, pp. 5-6, ¶ 82).  Also, in anticipation of pursuing class-wide allegations, Plaintiff has sometimes made it difficult to discern in which events he was personally involved.

### Joinder and Severance Considerations

Plaintiff should consider *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) and Federal Rule of Civil Procedure 18 and 20 when drafting his amended complaint.  In *George*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act of 1995 ("PLRA").  507 F.3d 605, 607 (7th Cir. 2007), *citing* 28 U.S.C. § 1915(b), (g).  "Unrelated claims against different defendants belong in different suits[.]"  *George,* 507 F.3d at 607.  Otherwise, prisoners easily could sidestep the requirements of the PLRA, Pub.L. No. 104–134, 110 Stat. 1321 (1996), in particular the PLRA's provisions regarding filing fees.  *See George,* 507 F.3d at 607.

Rule 18 provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-

party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a). Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George,* 507 F.3d at 607. However, under Rule 20, persons may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). Both of the requirements of Rule 20(a) must be satisfied in order to sustain party joinder under the rule. *See Intercon Research Associates., Ltd. v. Dresser Industries,* 696 F.2d 53, 57 (7th Cir. 1982). Rule 20 applies with as much force to cases brought by prisoners as it does to any other kind of case. *See George,* 507 F.3d at 607. Accordingly, "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner." *George,* 507 F.3d at 607.

If Plaintiff is unable to plead a conspiracy claim or some other nexus between his varied claims, severance of (many) claims may be warranted. As it is, there is no apparent reason to join a claim regarding how hot the cellhouse gets in summer with a request for medication being delayed or denied.

**Disposition**

For the reasons stated, the complaint (Doc. 1) is **DISMISSED** without prejudice for failure to comport with Federal Rules of Civil Procedure 8(a)(2) and (d)(1), with leave to amend. On or before May 6, 2013, Plaintiff Woodson shall file his "Amended Complaint," so captioned.

The amended complaint shall include a short plain statement of each claim, in conformity with Federal Rule of Civil Procedure 8. Plaintiff must also resubmit any exhibits he desires to have appended to the amended complaint. Failure to file an amended complaint by the prescribed deadline will be construed as a failure to prosecute this action and a failure to comply with an order of the Court, and this action will be dismissed pursuant to Federal Rule of Civil Procedure 41(b).

Plaintiff is **ADVISED** that this dismissal shall <u>not</u> count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file an amended complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed.R.Civ.P. 41(b).

**IT IS SO ORDERED.**

DATED: April 5, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge